UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Case No. 08 B 30836 |
| STEVEN FIELDING GINSBERG, ) | |
| Debtor. ) | Chapter 7 |
| ALFRED KOPLIN, ) | |
| Plaintiff, ) | Adv. No. 09 A 188 |
| v. ) | Judge Pamela S. Hollis |
| STEVEN FIELDING GINSBERG, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Steven Fielding Ginsberg's motion to dismiss this adversary proceeding for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable via Fed. R. Bankr. P. 7012. The underlying complaint seeks a finding that Ginsberg's debt to Alfred Koplin is nondischargeable under 11 U.S.C. § 523(a)(6). The parties were provided with an opportunity to respond and reply, and they did so timely. The court has reviewed the complaint and the papers filed, and for the reasons stated below, grants the motion to dismiss with leave to amend the complaint.

## BACKGROUND

As explained below in the Legal Discussion section, all well-pleaded factual allegations set forth in the complaint are taken as true for purposes of deciding a motion to dismiss.

Ginsberg, along with John Thomas, Louis Giordano, Brett Klotz, Daniel Mahru and Steven Livaditis (collectively, the "Business Partners") were at all relevant times, directly or indirectly, members in a limited liability company, Adams 105 LLC (the "LLC"). In addition to being a member of the LLC, Ginsberg was its attorney.

On or about November 30, 2005, the LLC entered into a purchase agreement (the "Purchase Agreement") to buy certain real property located at 105 W. Adams Street, Chicago, Illinois (the "Adams Property").

On or about January 9, 2006, the Business Partners entered into a loan agreement with Koplin (the "Loan Agreement"). Pursuant to the terms of the Loan Agreement, Koplin loaned the Business Partners $2,250,000.00 (the "Loan") for the business purpose of satisfying contract requirements related to the acquisition of the Adams Property. The Purchase Agreement was to remain in full force during the term of the Loan, and the Business Partners were obligated to repay the Loan on the Maturity Date (defined in the paragraph below).

In connection with the Loan, the Business Partners executed a promissory note in favor of Koplin (the "Promissory Note"). Pursuant to the terms of the Promissory Note, each of the Business Partners, collectively, jointly and severally agreed to repay Koplin the sum of $2,650,000.00 on or before March 28, 2006 (the "Maturity Date").

To secure their obligations to Koplin under the Loan Agreement and the Promissory Note, the Business Partners collaterally assigned to Koplin the LLC's interest in the Purchase Agreement (the "Collateral Assignment") and pledged to Koplin the Business Partners' membership interests in the LLC (the "Pledge"). The Collateral Assignment is contained in a one page rider to the Loan Agreement.

The rider provides that Koplin may exercise the Collateral Assignment in the event the Business Partners[1]:

> Fail to obtain loan commitment(s) totaling Fifty Three Million Dollars ($53,000,000) by February 28, 2006. Such commitment may include Five Million Dollars of mezzanine financing, which mezzanine financing may include the mezzanine financing requested of Payee (if approved). . . .

> Fail to report the status of seeking and obtaining primary financing every two (2) weeks to Kevin McCracken at DuPage National Bank, including such commercially reasonable information and documentation as may be requested by McCracken or Payee.

> In the absence of obtaining a commitment for funding sufficient to close the purchase of 105 W Adams by February 28, 2006, to fail to exercise the option to extend the 105 W Adams purchase contract to March 28, 2006.

After entering into the Loan Agreement and Promissory Note with, and receiving the proceeds of the Loan from, Koplin, the Business Partners transferred and assigned for value the LLC's rights and interests in the Purchase Agreement.

In exchange for transferring and assigning for value the LLC's rights and interests in the Purchase Agreement, the Business Partners received cash consideration from the purchaser (the "Transfer Consideration").

On account of the Business Partners' breaches of the Loan Agreement and Promissory Note, on or about August 9, 2006, Koplin sued the Business Partners for breach of contract and for other relief in <u>Alfred N. Koplin v. John Thomas, et al.</u>, Cook County Circuit Court, Case No. 06-CH-9910 (the "State Court Action").

On October 15, 2008, the Circuit Court of Cook County entered judgment (the "Judgment") in the State Court Action in favor of Koplin and against Ginsberg in the amount of $4,627,629.28 (the "Judgment Amount").

---

[1] The term used in the Collateral Assignment is "Borrowers," but the Borrowers are the same individuals as the Business Partners.

Copies of the Purchase Agreement, the Loan Agreement, the Promissory Note and the Judgment were attached to the complaint.

## LEGAL DISCUSSION

<u>The Supreme Court's New Standard for a Motion to Dismiss</u>

In the Supreme Court's most recent discussion of the standard applied to a motion to dismiss, the Court began "by taking note of the elements a plaintiff must plead to state a claim. . . ." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1947 (2009). Therefore, the court will begin with a review of the elements of a claim under 11 U.S.C. § 523(a)(6).

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

In order to sustain a claim under § 523(a)(6), Koplin's complaint must indicate that Ginsberg: (1) caused an injury; (2) acted willfully; and (3) acted with malice. See <u>In re Cole</u>, 378 B.R. 215, 226 (Bankr. N.D. Ill. 2007).

According to the Court, "only acts done with the actual intent to cause injury" are willful, and therefore come within the scope of § 523(a)(6). <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998). In other words, the injury must be intentional, "not merely a deliberate or intentional act that leads to injury." <u>Id.</u> As for acting with malice, the Seventh Circuit instructs us that actions are malicious when made "in conscious disregard of one's duties or without just cause or excuse." <u>Matter of Thirtyacre</u>, 36 F. 3rd 697, 700 (7th Cir. 1994) (citations omitted).

Debts arising from an intentional breach of contract generally are not excepted from discharge, unless accompanied by tortuous conduct. <u>In re Jercich</u>, 238 F. 3rd 1202, 1206 (9th Cir. 2001); <u>Lockerby v. Sierra</u>, 535 F. 3rd 1038, 1042 (9th Cir. 2008)

("Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to 'start afresh,'" and in fact conflicts with the statutory scheme of the Bankruptcy Code, which expressly permits intentional breaches of contract.). But see In re Williams, 337 F. 3rd 504 (5th Cir. 2003).

In his response to the motion to dismiss, Koplin argued that the tortious conduct alleged in his complaint is conversion.

> To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.

Loman v. Freeman, 229 Ill. 2nd 104, 127, 890 N.E.2nd 446, 461 (Ill. 2008) (citation omitted).

Having set forth the elements of the cause of action, the court will discuss the standard under which a complaint is reviewed to determine whether those elements were properly pled.

In Iqbal, the Supreme Court provided courts with a two part test to determine whether a complaint meets the requirement of Fed. R. Civ. P. 8, made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

First, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Well-pleaded factual allegations are taken as true, but legal conclusions are not. The court reviewed this complaint, and all well-pleaded factual allegations are included in the Background section of this opinion.

Second, having assumed the truth of those well-pleaded factual allegations, the court must "then determine whether they plausibly give rise to an entitlement to relief."

Id.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Id. at 1949 (citations and quotations omitted).

The Supreme Court did not eliminate the liberal federal notice pleading standard. Id. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Iqbal and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), do provide a more rigorous test for complaints than that previously applied in this Circuit. The court will review this motion to dismiss under that stricter standard.

The Complaint Fails To State a Claim Under 11 U.S.C. § 523(a)(6).

To give rise to a claim under § 523(a)(6), Koplin's complaint must plead factual content that allows the court to draw the reasonable inference that Ginsberg: (1) caused an injury; (2) acted willfully; and (3) acted maliciously.

Koplin argues that with conversion, the "injury is that the creditor's collateral was wrongly or improperly disposed of. Whether or not the debtor intended that the secured creditor would go unpaid is beside the point." In re Buckley, 2009 WL 400628, *2 (Bankr. C.D. Ill. Feb. 17, 2009).

This is an accurate statement of the requirements for a claim of conversion. But it does not negate the requirement of intent to cause injury demanded by § 523(a)(6). Although the debtor in Buckley admitted to conversion, that admission was not sufficient to find the debt nondischargeable. The court was still compelled to determine whether an intentional injury was proved. Indeed, Buckley's very next sentence confirms this – "An intentional injury is established by proof that the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than payment of the debt that the property secured." Id.

The property at issue in this proceeding is Koplin's rights in the Purchase Agreement or its proceeds, the Transfer Consideration, pursuant to the Collateral Assignment. Koplin alleged that the Business Partners "knowingly and intentionally" transferred certain of the LLC's rights and interests in the Purchase Agreement. This alleges only an intentional act, not an intent to do harm or cause injury. Furthermore, it describes an act taken by the Business Partners, and not by Ginsberg individually. There are no allegations in the complaint that Ginsberg intended to improperly use Koplin's property and/or its proceeds.

Moreover, while Koplin's potential interest in that property is described in the Loan Agreement, by its terms the Collateral Assignment provided that Koplin could exercise that interest only if one of three events occurred. The complaint contains no allegations that any of those three conditions precedent was met. The claim of conversion is not facially plausible, because Koplin has not alleged that he had any rights over which Ginsberg might have improperly exercised control.

Moreover, Koplin failed to plead three of the four elements of conversion. The complaint contains no allegations that he had any rights in the Purchase Agreement, other than a potential interest if a condition precedent was satisfied, or that he had an absolute and unconditional right to the Purchase Agreement, or that he made any demand for it or for the Transfer Consideration. The complaint does allege that the Business Partners wrongfully and without authorization assumed control, dominion, or ownership over the Purchase Agreement, but as discussed above, those allegations describe an action by all of the Business Partners, rather than by Ginsberg individually. Moreover, that is merely one of the four elements of conversion.

## CONCLUSION

For the reasons stated above, the court finds that the complaint does not rise to the standard required by Iqbal and Twombly, and the well-pleaded factual allegations do not "plausibly give rise to an entitlement to relief." The motion to dismiss is granted, and leave given to amend the complaint consistent with the discussion herein.

Date: JUL 15 2009

PAMELA S. HOLLIS
United States Bankruptcy Judge