## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08 B 30836 |
| STEVEN FIELDING GINSBERG, ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| ALFRED KOPLIN, ) | |
| ) | |
| Plaintiff, ) | Adv. No. 09 A 188 |
| ) | |
| v. ) | |
| ) | Judge Pamela S. Hollis |
| STEVEN FIELDING GINSBERG, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This matter comes before the court on Steven Fielding Ginsberg's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable via Fed. R. Bankr. P. 7012. The original complaint was dismissed on Ginsberg's motion on July 15, 2009, and leave given to file an amended complaint.

The amended complaint, filed on August 17, 2009, seeks a finding that Ginsberg's debt to Alfred Koplin is nondischargeable under 11 U.S.C. § 523(a)(6) on the grounds that Ginsberg converted Koplin's collateral. The parties were provided with an opportunity to respond and reply to this motion to dismiss, and they did so timely. The court has reviewed the complaint and the papers filed, and for the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

All the factual allegations set forth in the amended complaint are summarized in this Background section. In the Legal Discussion section, to the extent necessary, the court will identify those allegations that are well-pleaded, and thus entitled to an assumption of truth, as well as certain of those allegations that are no more than conclusions. Although the complaint is viewed herein in the light most favorable to plaintiff, allegations that are no more than conclusions are not presumed to be true for purposes of deciding this motion to dismiss. Allegations in the complaint that are legal conclusions are not included in this section.

Ginsberg, along with John Thomas, Louis Giordano, Brett Klotz, Daniel Mahru and Steven Livaditis (collectively, the "Business Partners") held themselves out to be, at all relevant times, directly or indirectly, members in a limited liability company, Adams 105 LLC (the "LLC"). In addition to being a member of the LLC, Ginsberg was its attorney.

On or about November 30, 2005, the LLC entered into a purchase agreement (the "Purchase Agreement") to buy certain real property located at 105 W. Adams Street, Chicago, Illinois (the "Adams Property").

On or about January 9, 2006, the Business Partners entered into a loan agreement with Koplin (the "Loan Agreement"). Pursuant to the terms of the Loan Agreement, Koplin loaned the Business Partners $2,250,000.00 (the "Loan") in order to finance the acquisition of the Adams Property. The Purchase Agreement was to remain in full force during the term of the Loan, and the Business Partners were obligated to repay the Loan on the Maturity Date (defined in the paragraph below).

In connection with the Loan, the Business Partners executed a promissory note in favor of Koplin (the "Promissory Note"). Pursuant to the terms of the Promissory Note, each of the Business Partners, collectively, jointly and severally agreed to repay Koplin the sum of $2,650,000.00 on or before March 28, 2006 (the "Maturity Date").

To secure their obligations to Koplin under the Loan Agreement and the Promissory Note, the Business Partners collaterally assigned to Koplin the LLC's interest in the Purchase Agreement (the "Collateral Assignment") and pledged to Koplin the Business Partners' membership interests in the LLC (the "Pledge"). The Collateral Assignment is contained in a one page rider to the Loan Agreement.

The rider provides that Koplin may exercise the Collateral Assignment in the event the Business Partners[1]:

> Fail to obtain loan commitment(s) totaling Fifty Three Million Dollars ($53,000,000) by February 28, 2006. Such commitment may include Five Million Dollars of mezzanine financing, which mezzanine financing may include the mezzanine financing requested of Payee (if approved). . . .
>
> Fail to report the status of seeking and obtaining primary financing every two (2) weeks to Kevin McCracken at DuPage National Bank, including such commercially reasonable information and documentation as may be requested by McCracken or Payee.
>
> In the absence of obtaining a commitment for funding sufficient to close the purchase of 105 W Adams by February 28, 2006, to fail to exercise the option to extend the 105 W Adams purchase contract to March 28, 2006.

The LLC failed to obtain timely loan commitments, and failed to exercise the option to extend the Purchase Agreement.

When he learned of the occurrence of these two events of default, Koplin demanded repayment of the Loan from the Business Partners.

---

[1] The term used in the Collateral Assignment is "Borrowers," but the Borrowers are the same individuals as the Business Partners.

After Koplin made his demand, the Business Partners transferred and assigned for value the LLC's rights and interests in the Purchase Agreement.

In exchange for transferring and assigning for value the LLC's rights and interests in the Purchase Agreement, the Business Partners received cash consideration from the purchaser (the "Transfer Consideration").

The Business Partners did not pay Koplin from the Transfer Consideration, notwithstanding the fact that Ginsberg knew that the Loan should be paid from the Transfer Consideration and so advised the other Business Partners.

On account of the Business Partners' breaches of the Loan Agreement and Promissory Note, on or about August 9, 2006, Koplin sued the Business Partners for breach of contract and for other relief in <u>Alfred N. Koplin v. John Thomas, et al.</u>, Cook County Circuit Court, Case No. 06-CH-9910 (the "State Court Action").

On October 15, 2008, the Circuit Court of Cook County entered judgment (the "Judgment") in the State Court Action in favor of Koplin and against Ginsberg in the amount of $4,627,629.28 (the "Judgment Amount").

Copies of the Purchase Agreement, the Loan Agreement, the Promissory Note and the Judgment were attached to the amended complaint.

## LEGAL DISCUSSION

<u>The Supreme Court's New Standard for a Motion to Dismiss</u>

In the Supreme Court's most recent discussion of the standard applied to a motion to dismiss, the Court began "by taking note of the elements a plaintiff must plead to state a claim. . . ." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1947 (2009).

Therefore, the court will begin with a review of the elements of a claim under 11 U.S.C. § 523(a)(6).

**(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . . .

**(6)** for willful and malicious injury by the debtor to another entity or to the property of another entity;

In order to sustain a claim under § 523(a)(6), Koplin's complaint must indicate that Ginsberg: (1) caused an injury; (2) acted willfully; and (3) acted with malice. See In re Cole, 378 B.R. 215, 226 (Bankr. N.D. Ill. 2007).

According to the Court, "only acts done with the actual intent to cause injury" are willful, and therefore come within the scope of § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). In other words, the injury must be intentional, "not merely a deliberate or intentional <u>act</u> that leads to injury." Id. (emphasis in original). As for acting with malice, the Seventh Circuit instructs us that actions are malicious when made "in conscious disregard of one's duties or without just cause or excuse." Matter of Thirtyacre, 36 F. 3rd 697, 700 (7th Cir. 1994) (citations omitted).

Debts arising from an intentional breach of contract generally are not excepted from discharge, unless accompanied by tortious conduct. In re Jercich, 238 F. 3rd 1202, 1206 (9th Cir. 2001). See Lockerby v. Sierra, 535 F. 3rd 1038, 1042 (9th Cir. 2008) (the reasoning in Geiger "strongly suggests the Court would not approve of a definition of 'tortious conduct' that would include intentional breaches of contract whenever it is substantially certain that the breach will cause injury"). But see In re Williams, 337 F. 3rd 504 (5th Cir. 2003); Wish Acquisition, LLC v. Salvino, 2008 WL 182241, *3-4 (N.D. Ill. Jan. 18, 2008) (noting split between Circuits and concluding that the better reading requires tortious conduct).

Koplin asserts in the amended complaint that Ginsberg converted his collateral, and that such conversion was tortious conduct meeting the heightened standard of culpability required for a finding of nondischargeability under § 523(a)(6).

> To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.

Loman v. Freeman, 229 Ill. 2nd 104, 127, 890 N.E.2nd 446, 461 (Ill. 2008) (citation omitted).

The problem with Koplin's assertion, however, is that a finding of conversion does not necessarily result in a finding of nondischargeability under § 523(a)(6). To act "wrongfully and without authorization" is not the same as acting with malice. See Garoutte v. Damax, Inc., 400 B.R. 208, 213 (S.D. Ind. 2009) ("The Indiana judgment that [the debtor] committed criminal conversion is not necessarily the same as a determination that [the debtor] willfully and maliciously injured [the plaintiff] or its property.") (footnote omitted). See also In re West, 339 B.R. 557, 565 (Bankr. E.D.N.Y. 2006) (jury may have decided that criminal defendant/debtor acted recklessly rather than intentionally, thus collateral estoppel could not be employed to grant summary judgment on a § 523(a)(6) claim).

In this case, as distinguished from Garoutte and West, there is no prior determination that Ginsberg committed criminal conversion. This court is not being asked to consider whether, under the doctrine of collateral estoppel, a prior determination of criminal conversion requires a finding that Ginsberg's debt is nondischargeable.

Instead, the question before the court today is whether Koplin's amended complaint alleges the elements required under § 523(a)(6). Therefore, if Koplin not only

- 6 -

alleged conversion, but also alleged that the conversion was accomplished deliberately or intentionally rather than knowingly, than the amended complaint might survive a motion to dismiss.

Having set forth the elements of the cause of action, the court will discuss the standard under which a complaint is reviewed to determine whether those elements were properly pled.

In Iqbal, the Supreme Court provided a two part test to determine whether a complaint meets the requirement of Fed. R. Civ. P. 8, made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

First, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Well-pleaded factual allegations are taken as true, but legal conclusions are not. The allegations in the complaint are viewed in the light most favorable to the plaintiff.

As the court stated at the beginning of this opinion, all the factual allegations set forth in the complaint are summarized in the Background section of this opinion. Later in this Legal Discussion section, to the extent necessary, the court will identify those allegations that are well-pleaded, and thus entitled to an assumption of truth, as well as those that are no more than conclusions.

Second, having assumed the truth of those well-pleaded factual allegations, the court must "then determine whether they plausibly give rise to an entitlement to relief." Id.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

Id. at 1949 (citations and quotations omitted).

The Supreme Court did not eliminate the liberal federal notice pleading standard, but it did clarify it. Id. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Iqbal and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide a more rigorous test for complaints than that previously applied in this Circuit. The court will review this motion to dismiss under that stricter standard.

### The Complaint Fails To State a Claim Under 11 U.S.C. § 523(a)(6).

To give rise to a claim under § 523(a)(6), Koplin's complaint must plead factual content that allows the court to draw the reasonable inference that Ginsberg: (1) caused an injury; (2) acted willfully; and (3) acted maliciously.

> The amended complaint not only fails to allege that Ginsberg acted willfully, it actually alleges that Ginsberg had no intent to injure Koplin and unsuccessfully tried to stop the Business Partners from doing so.

As the court recited above, the Supreme Court instructed us that "only acts done with the actual intent to cause injury" are willful, and therefore come within the scope of § 523(a)(6). Geiger, 523 U.S. at 61. In other words, the injury must be intentional, "not merely a deliberate or intentional act that leads to injury." Id. (emphasis in original).

When the factual situation involves conversion of collateral, "[a]n intentional injury is established by proof that the debtor intended to improperly use the creditor's

- 8 -

collateral and/or its proceeds for purposes other than payment of the debt that the property secured." In re Buckley, 2009 WL 400628, *2 (Bankr. C.D. Ill. Feb. 17, 2009) (citation omitted).

Koplin argues that the amended complaint alleges an intentional injury at paragraphs 17 and 18:

> 17. After Koplin's Demand, the Debtor and the other Business Partners knowingly and intentionally transferred and assigned for value the LLC's rights and interests in the Purchase Agreement. In so doing, the Debtor and the other Business Partners wrongfully asserted control over the Purchase Agreement and deprived Koplin of his rights under the Collateral Assignment and the Pledge.
>
> 18. Also after Koplin's Demand, in exchange for transferring and assigning for value the LLC's rights and interests in the Purchase Agreement, the Debtor and the Business Partners received cash consideration from the transferee (the "Transfer Consideration") and failed to pay Koplin therefrom, notwithstanding the fact that the Debtor (i) knew that Koplin's Loan should be paid from the Transfer Consideration and (ii) so advised the other Business Partners. In so doing, the Debtor and the other Business Partners wrongfully asserted control over the proceeds of the Purchase Agreement (i.e., the Transfer Consideration) and deprived Koplin of his rights under the Collateral Assignment and the Pledge.

For the moment, the court will put aside the question of whether the amended complaint alleged that Koplin had property of which he could be deprived. The focus must first be on what the complaint alleges regarding Ginsberg's intent.

The key allegation is in paragraph 18: "the Debtor and the Business Partners received cash consideration from the transferee (the "Transfer Consideration") and failed to pay Koplin therefrom, <u>notwithstanding the fact that the Debtor (i) knew that Koplin's Loan should be paid from the Transfer Consideration and (ii) so advised the other Business Partners</u>." (Emphasis added.) Koplin has alleged that Ginsberg knew Koplin

-9-

should have been paid from the Transfer Consideration and that he told the other members of the LLC that they should do this. Despite Ginsberg's advice, the LLC did not pay Koplin from the Transfer Consideration.

Not only does the amended complaint fail to allege that Ginsberg had the intent to injure Koplin, it actually alleges just the opposite – he knew Koplin should have been paid and tried to get that accomplished.

Koplin argues in his response to the motion to dismiss that this allegation <u>does</u> establish an intent to injure, because it means Ginsberg "knew that his actions with respect to the Purchase Agreement and the Transfer Consideration were wrong, but he did them just the same." Response at page 4.

First, Koplin has not alleged that Ginsberg actually <u>did</u> anything other than advise the other members of the LLC what to do. Ginsberg was not a managing member of the LLC, and had no authority to act on its behalf. The LLC, rather than Ginsberg individually, failed to pay Koplin from the Transfer Consideration. Ginsberg did not sign the Collateral Assignment, only the co-managers of the LLC, John Thomas and Daniel Mahru.

Moreover, the court disagrees with Koplin's interpretation. Taking as true the allegation that Ginsberg advised the other Business Partners to pay Koplin from the Transfer Consideration, it is not plausible that the court could ever find that Ginsberg intended to injure Koplin. According to Koplin's own amended complaint, Ginsberg told the other Business Partners that Koplin had to be paid.[2] The advice Ginsberg gave the

---

[2] Koplin alleged the obverse in paragraphs 14 and 15 of his amended complaint against managing member Daniel Mahru:
    14.    The Debtor [Mahru], <u>despite the advice of counsel to the LLC and contrary to the same</u>, acted deliberately, intentionally and willfully to convert and divert the Transfer Consideration funds

- 10 -

Business Partners is completely contrary to an intent to injure Koplin, and precludes the possibility of finding this debt nondischargeable under § 523(a)(6).

Although the amended complaint's failure to allege intent to injure is fatal, and must result in granting the motion to dismiss, the court will address the other issues raised by the parties.

### The amended complaint fails to allege that Koplin had rights in the Purchase Agreement or the Transfer Consideration.

Next, the court will return to the question of whether Koplin had rights in the Purchase Agreement or its proceeds, the Transfer Consideration, pursuant to the Collateral Assignment. By the terms of the Collateral Assignment, Koplin could only exercise his potential interest in the Purchase Agreement if one of three events occurred. The amended complaint alleges that two of those three conditions precedent were met, and that "Koplin had an absolute and unconditional <u>right to exercise his rights</u> under the Collateral Assignment." Amended Complaint, paragraph 15 (emphasis added).

This is the slim thread on which Koplin hangs his claim that he was deprived of property, such property being the "right to exercise rights." Conversion, however, requires "an absolute and unconditional right to the immediate possession of the property." Loman, 229 Ill. 2nd at 127. According to the Collateral Assignment, if one of the conditions precedent occurred, the "105 Purchase Assignment may be exercised by" Koplin. Collateral Assignment, paragraph 2. And the Business Partners were entitled to

---

        to himself and to others and, in so doing, deliberately and intentionally injured Koplin by depriving him of his interests in the funds which were specifically loaned solely for the purchase of the Adams Property.
15.    Debtor's [Mahru's] actions individually and as managing member of the LLC were taken <u>contrary to the advice of counsel</u>, and were intended to directly injure Koplin.
Koplin v. Mahru, 09 A 251 (Bankr. N.D. Ill.), Amended Complaint (emphasis added).

- 11 -

notice of such an election. Collateral Assignment, paragraph 4 ("Upon Payee notice to Borrower of Payee's election to exercise the 105 Purchase Assignment . . .").

Koplin argues that his demand for repayment of the Loan was sufficient to exercise these rights. The parties both cite <u>Caterpillar, Inc. v. Sturman Industries, Inc.</u>, on the question of whether Koplin's demand was sufficient.

> While no formal words are required to constitute a demand, a demand must be a request for present delivery of the property, and must be in absolute, unequivocal terms. The demand must be reasonable in nature and sufficiently definite and complete to apprise the defendant of the specific property claimed.

2005 WL 3132196, *2 (C.D. Ill. Nov. 22, 2005) (internal quotations omitted).

However, the parties have conflated two issues. Conversion requires a demand for possession, and this is the demand requirement addressed by <u>Caterpillar</u>. But before Koplin had the authority to make a demand for possession, which would satisfy one of the elements of conversion, he needed to make an election to exercise his rights and to provide notice of this election to the Business Partners. Only after he did so would he have "an absolute and unconditional right to immediate possession of the property," and thus be in a position to make a demand for its possession.

In other words, the amended complaint must first allege that Koplin notified the Business Partners that he was making an election to exercise his rights. Once he had done so, he had a right to the Purchase Agreement or Transfer Consideration, an absolute and unconditional right to immediate possession of property. This right could be the subject of a claim for conversion. In order to plausibly allege conversion, Koplin would then need to allege that a demand was made for the property, a demand that satisfies the standard explained in <u>Caterpillar</u>.

- 12 -

Koplin argues in his response to the motion to dismiss that the mere occurrence of two of the three conditions precedent gave him the absolute and unconditional right he needed to make a demand for the Transfer Consideration. But paragraph 15 of the amended complaint belies this argument: "Koplin had an absolute and unconditional <u>right to exercise his rights</u> under the Collateral Assignment." (Emphasis added.)

Without any allegations that Koplin <u>did</u> exercise his rights by making an election to do so, and by notifying the Business Partners of this election, it is not plausible that Koplin had property for which he had an absolute and unconditional right to immediate possession. If he did not have an absolute and unconditional right to immediate possession, it is not plausible that he can prove a claim for conversion of that property, regardless of whether he made a "sufficiently definite and complete" demand for it as described in <u>Caterpillar</u>.

<u>The amended complaint fails to allege that Koplin acted maliciously.</u>

The Seventh Circuit tells us that actions are malicious when made "in conscious disregard of one's duties or without just cause or excuse." <u>Thirtyacre</u>, 36 F. 3rd at 700 (citations omitted).

First, the amended complaint does not allege that Ginsberg had any duty to Koplin that he might have disregarded. Ginsberg was merely a member of the LLC, and there are no allegations that he had managerial authority. At the time of the events alleged in the amended complaint, Illinois did not impose a fiduciary duty on a non-managing member like Ginsberg. <u>See</u> 805 ILCS 180/15-3(g)(1). <u>See also</u> Sally S. Neely, <u>Partnerships and Partners and Limited Liability Companies and Members in Bankruptcy: Proposals for Reform</u>, 71 AM. BANKR. L. J. 271, 283(II)(B)(5) (1997) ("Members of

- 13 -

manager-managed LLCs owe no fiduciary duties, except to the extent that they participate in management."); Larry E. Ribstein, The Emergence of the Limited Liability Company, 51 BUS. LAW 1, 16 (Nov. 1995) ("Fiduciary duties of managers differ, therefore, from good faith duties that are imposed on members as such. The latter mainly have a duty to refrain from using their contract rights unreasonably . . . . Non-managing members otherwise may act in their self-interest."). So Ginsberg could not have acted in disregard of any fiduciary duties to Koplin, because he had none.

Koplin argues that Ginsberg had a duty to repay the Loan, and "that by not repaying the Loan or complying with Koplin's demand for the Purchase Agreement and Transfer Consideration, the Debtor injured Koplin in conscious disregard of these duties." Response to motion to dismiss, at 6.

This argument cannot prevail. Virtually every debtor who files for protection under the Bankruptcy Code owes a debt to a creditor. Outside of bankruptcy court, there is an obligation to repay the debts one owes. But if this court were to conclude that failure to pay a debt constitutes a malicious injury, than every debtor who does not repay his creditors 100 cents on the dollar has maliciously injured those creditors.

Koplin then argues that his allegation that Ginsberg committed the tort of conversion satisfies the requirement that he plausibly allege a malicious injury. As the court discussed above, it is not enough for Koplin merely to allege the elements of conversion. The amended complaint must allege that the conversion was accomplished deliberately or intentionally rather than knowingly.

This argument brings us back to the discussion of whether Ginsberg acted willfully. The court determined in that section that the allegations in the complaint could

not support a plausible claim that Ginsberg acted willfully, because of the allegation that Ginsberg knew Koplin should have been paid from the Transfer Consideration and he so advised the other members of the LLC.

This allegation must also defeat any plausible claim that Ginsberg deliberately or intentionally converted Koplin's property, even if Koplin used the magic words elsewhere in the complaint to allege a heightened level of culpability. Taking as true the allegation that Ginsberg advised the other Business Partners to pay Koplin from the Transfer Consideration, it is simply not plausible for the court to draw the reasonable inference that Ginsberg acted deliberately or intentionally. Without a deliberate or intentional action, Ginsberg could not have acted maliciously and therefore could not be liable for the misconduct alleged.

## CONCLUSION

For the reasons stated above, the court finds that the complaint does not rise to the standard required by Iqbal and Twombly, and the well-pleaded factual allegations do not "plausibly give rise to an entitlement to relief." The motion to dismiss is granted without leave to amend.

Date:  DEC 15 2009

PAMELA S. HOLLIS
United States Bankruptcy Judge